### MARYLAND CASUALTY CO. v. NATIONAL MUT. CASUALTY CO. OF TULSA, OKLAHOMA et al.

No. 3645.

United States Court of Appeals Tenth Circuit.

Nov. 5, 1948.

Wm. E. Kemp, of Kansas City, Mo. (Paul G. Koontz, of Kansas City, Mo., Willard L. Phillips, of Kansas City, Kan., and E. H. McVey, of Kansas City, Mo., on the brief), for appellant.

Barton E. Griffith, of Topeka, Kan., for appellees.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

The Maryland Casualty Company, herein called Maryland, brought this action under the Federal Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202, against the National Mutual Casualty Company, herein called National, and Donald J. Eickman, for a declaration of liability against National. At the conclusion of Maryland's evidence, the trial court entered a judgment sustaining National's demurrer to the evidence and its motion to dismiss on the ground that it had failed to make a case entitling it to any relief. Maryland has appealed.

On April 11, 1946, Maryland issued its liability policy of insurance to Melvin W. Crouse, operating a trucking business at Chester, Nebraska, covering the truck in question. The policy contained the usual provision obligating Maryland to pay all sums within the maximum coverage therein which the insured became obligated to pay by reason of liability imposed upon him by law resulting from the operation of the truck in his business. The policy provided that the word "Insured" means Crouse and any person using the truck with his per-

mission, unless otherwise stated. It also contained these provisions: "13. Other Insurance. Coverages A and B. If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss * * *"

Eickman, a resident of Nebraska, was engaged in selling and servicing artificial gas systems. He owned a Chevrolet truck which he used in his business in making trips in Kansas. He held a license from the Kansas Corporation Commission as a "Private Motor Carrier." In compliance with applicable Kansas statutory provisions, he filed with the Corporation Commission an appropriate liability insurance policy issued by National. The general coverage under this policy and the liability provisions thereof are similar to those in the Maryland policy covering Crouse. The controversy in this litigation centers around the following provisions of the National policy. "It is further understood and agreed that The company waives a description of the motor vehicles, trailers or semitrailers insured hereunder and the policy is hereby amended and extended so as to cover any and all motor vehicles, trailers and semitrailers operated or used by the assured pursuant to the certificate, permit or license issued by the State Corporation Commission of Kansas."

The policy contained a further endorsement entitled "Reimbusement Agreement" which, in substance, required the insured to reimburse the company for any payment made by it on account of any loss, damage, claim or suit involving a breach of the terms of the policy or arising out of the ownership or use of any motor vehicle not described in the policy and which payment the company would not have been obligated to make but for the provisions of the State Regulatory Commission endorsement.

The evidence shows that in August, 1946, and again in October, 1946, Eickman employed Crouse to transport supplies for him from Wichita, Kansas, to his place of business in Nebraska. For these trips Eickman paid the established transportation charge which in each instance was $40. In November, 1946, he again engaged Crouse to transport supplies for him from Wichita to his place of business in Nebraska. When the date for this trip arrived, both Crouse and the driver of his truck were busy and it was inconvenient for them to make the trip. It was, accordingly, agreed that Eickman should take the Crouse truck and make the trip. On his return from Wichita, Eickman was involved in an accident out of which the liability arose. Maryland took the position that Eickman made this trip in the course of his business and under his Kansas license as a Private Motor Carrier and therefore National was liable for the damage caused by the accident under that provision of its policy that insures "all motor vehicles * * * operated or used by the assured pursuant to the certificate, permit or license issued by the State Corporation Commission of Kansas." In other words, it contended that Eickman was operating under his Kansas permit as a Private Motor Carrier. National, on the other hand, took the position that Eickman made the trip outside the course of his business as as Private Motor Carrier, and as an employee of Crouse. Eickman, as defendant, is interested in the outcome of the litigation under the reimbursement provisions of this policy only if National is held liable under the provisions of its policy.

Concerning the arrangement under which the trip was made, Crouse testified that, "As I remember it, I told him that I could not go on the trip myself and that my driver would not be able to go and that if he could take the truck and make the trip, I would take off the driver's wages, and it would help me out * * *"

Crouse had no Kansas motor carriers' license, and whenever he or his driver, Baloun, came into Kansas for Eickman, they obtained special clearance at the Port of Entry at Belleville, pursuant to Section 66-1305, Kansas Statutes, 1935. The special clearance certificate allows an out-of-state truck transporting passengers or property for compensation to enter Kansas and transport any articles which he wants to haul upon payment of a special

mileage tax. The night before the trip in question, Crouse told defendant Eickman to pay this special tax and that he, Crouse, would reimburse him for it by taking it out of the freight charge. It was understood between them that the truck should be registered at the Port of Entry in Crouse's name as on previous trips. Eickman, accordingly, on entering Kansas, registered the truck in the name of Melvin Crouse as owner. He listed Maryland Casualty Company as the insurer and signed his name on the registration as "driver." Eickman was charged the regular transportation charges of $40 as on each of the two previous trips. He was allowed a credit for driver's wages and for the registration fee, and paid Crouse the difference of $32.

The provisions of National's policy relating to vehicles other than the one described in the policy was that it applied to such other vehicles when they were used pursuant to the certificate, permit, or license issued by the State Corporation Commission of Kansas. Section 66-1,108, Kansas Statutes 1935, reads in part as follows: "(i) The term 'private motor carrier of property' when used in this act shall mean any person engaged in transportation, by motor vehicle, of property sold or to be sold by him in the furtherance of any private commercial enterprise, or property transported by the owner, lessee or bailee for the purpose of lease, rent or bailment."

Crouse was licensed as a public carrier in Nebraska. He had contracted to transport this merchandise in the regular course of his business as such a carrier. At the last moment he was unable to make the trip himself or send his regular driver to drive the truck. It was accordingly arranged that Eickman should drive the truck and be allowed driver wages on his bill to Crouse. Eickman's driving the truck for Crouse did not change the character of the transaction. Eickman did not undertake the operation under his license as a private carrier, as such a carrier is defined in the applicable statutes set out above. The transaction was not that of a private carrier as such a carrier is defined by the Kansas Statutes. The whole course of conduct by both parties indicates that they understood that Eickman was acting for Crouse in driving the truck and not in the course of his business as a private carrier under his permit.

Nor does it change the character of the transaction to say that Eickman might have obtained the truck by lease, bailment, or otherwise, and made the same trip under his permit as a private carrier. The answer is that this was not done. Had he made this trip under his license as a private carrier in the course of his business, it would not have been necessary for him to register the truck at the State border and pay a special mileage tax. Crouse, in the course of his business, was the only one required to do this.

The trip not having been made pursuant to the private carrier's license held by Eickman, it follows that Nationals' policy did not cover the accident which occurred on the trip. The trial court correctly concluded that Maryland had failed to establish facts entitling it to relief against National and its judgment is therefore affirmed.